UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| In re: | ) | Chapter 11 |
|---|---|---|
| | ) | |
| DAIRY PRODUCTIONS SYSTEMS-GEORGIA LLC, | ) ) ) | Case No. 10-11752-JDW |
| | ) | |
| DAIRY PRODUCTIONS SYSTEMS, LLC, | ) | Case No. 10-11754-JDW |
| | ) | |
| DAIRY PRODUCTIONS SYSTEMS-MISSISSIPPI, LLC, | ) ) ) | Case No. 10-11755-JDW |
| | ) | |
| NEW FRONTIER DAIRY, LLC | ) | Case No. 10-11756-JDW |
| | ) | |
| HEIFER HAVEN, LLC | ) | Case No. 10-11757-JDW |
| | ) | |
| Debtors. | ) ) | |

APPLICATION FOR AN ORDER DIRECTING
JOINT ADMINISTRATION OF CASES
PURSUANT TO BANKRUPTCY RULE 1015

Dairy Production Systems - Georgia LLC, ("DPS-Georgia") Dairy Production Systems, LLC ("DPS"), Dairy Production Systems - Mississippi, LLC, ("DPS-Mississippi") New Frontier Dairy, LLC, ("New Frontier Dairy") and Heifer Haven, LLC ("HH"; DPS-Georgia, DPS, DPS Mississippi, New Frontier Dairy, and HH are collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned bankruptcy cases (the "Bankruptcy Cases"), hereby apply (the "Application") to this Court for an order, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), providing for the joint administration of the Debtors' separate Chapter 11 cases for procedural purposes only. In support of this

Application, the Debtors rely on the Declaration of David P. Sumrall, President and CEO of the Debtors, in Support of Chapter 11 Petitions and First-Day Orders (the "Sumrall Declaration").[1]

I. **GENERAL BACKGROUND**

1. On the date hereof (the "Petition Date") the Debtors commenced voluntary cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to operate their businesses and manage their property as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. No creditors' committee has yet been appointed in these Bankruptcy Cases.

A. **Description of the Debtors' Businesses**

3. Each of the Debtors are single-member limited liability companies formed under the laws of the state of Colorado and currently wholly owned and solely managed by David P. Sumrall ("Mr. Sumrall"). By virtue of their common ownership, the Debtors are affiliates of one another as that term is defined in section 101(2) of the Bankruptcy Code. As more specifically described below, the Debtors own and/or operate five (5) dairy farms located in Florida, Georgia, Mississippi, and Texas. The Debtors' gross revenue on a consolidated basis was approximately $57,248,119 and $47,967,685, in 2008 and 2009 respectively.

4. DPS was formed in October of 2004, and is headquartered in High Springs, Florida. DPS operates in Florida two separate dairy operations, known as the Branford Farm and the Bell Farm, both acquired through merger of Aurora Dairy – Florida, LLC simultaneous with the purchase of all the membership interests of that entity. Currently, DPS owns an aggregate of approximately 3,174 head of cattle (at capacity the two farms would own approximately 4,500 head of cattle), with a permitted milking herd capacity of 3,750 head. The

---

[1] Any capitalized terms not defined in the Application shall have the meaning ascribed to them in the Sumrall Declaration.

2

two DPS farms are approximately 15 miles apart in Gilchrist County, Florida. DPS owns a total of 1,049 acres, approximately 560 acres of which are irrigated and yield crops that account for approximately 40% of the two herds' forage needs (the balance of forage needs is produced by surrounding local area farmers and supplemented with necessary grains and protein). DPS also has dairy parlors, newly constructed, state-of-the-art freestall housing for the milking herds, and various other customary dairy improvements located on the premises of the farms.

5. DPS-Mississippi was formed in May of 2005 and owns assets contributed from Aurora Dairy – Mississippi, LLC, (an LLC formerly owned by Mr. Sumrall and now dissolved) consisting of approximately 1,390 head of cattle (at capacity it would own approximately 1,800 head of cattle) and a 240 acre farm located near Jackson, Mississippi (the "Edwards Farm"). DPS-Mississippi purchases its forage needs locally, and imports its grain and protein needs.

6. DPS-Georgia was formed in November of 2008 and owns the operating assets acquired from Aurora Dairy - Georgia, LLC ("Aurora-Georgia"), exclusive of the real property owned by Aurora-Georgia. DPS–Georgia owns approximately 3,490 head of cattle (at capacity it would own approximately 4,200 head of cattle), along with equipment and dairy improvements located on a 1,065-acre farm leased from Aurora-Georgia (the "Aurora-Georgia Farm"). DPS–Georgia's lease agreement with Aurora-Georgia provides it with an option to purchase the Aurora-Georgia Farm. The Aurora-Georgia Farm includes 500 irrigated acres which account for approximately 50% of the herd's forage needs.

7. HH was formed in May of 2007 and raises the heifer calves which were born in the DPS and DPS–Georgia operations. HH contracts with independent growers who carry these animals through maturation to calving-age, at which point the heifers are purchased by the appropriate operation and become a part of that production facility. HH does not own any real

3

estate or equipment. HH capitalizes the costs of heifer raising monthly and then discharges those costs at the time of purchase. Heifers are sold at cost and booked into the appropriate entity's cattle inventory at that same cost.

8. New Frontier Dairy was formed in December of 2007 and owns three milking parlors located on approximately 1,000 acres in Dublin, Texas (the "<u>New Frontier Farm</u>"). Milk from New Frontier Dairy is marketed through Lone Star Milk Producers cooperative. Currently, New Frontier Dairy owns approximately 2,500 head of cattle (at capacity the farm would own approximately 4,500 head of cattle), and the real property and equipment to operate the New Frontier Farm.

**B. Description of the Debtors' Senior Secured Debt**

9. On or about September 6, 2007, New Frontier Bank of Greeley, Colorado ("<u>NFB</u>") made a loan to DPS in the original principal amount of $2.825 million (the "<u>First DPS Loan</u>") as evidenced by a Promissory Note and Security Agreement dated September 6, 2007 made payable by DPS to NFB in the original principal amount of $2,825,000.00. The First DPS Loan (and all other debts of DPS to NFB and its successors and assigns) is secured by a deed to secure debt on the Aurora-Georgia owned Aurora-Georgia Farm, and all furniture, fixtures, and equipment owned by DPS and Aurora-Georgia.

10. On or about October 19, 2007, NFB made a loan to DPS in the original principal amount of $6.8 million (the "<u>Second DPS Loan</u>") as evidenced by a Promissory Note dated October 19, 2007 made payable by DPS to NFB in the original principal amount of $6,800,000.00. The Second DPS Loan (and all other debts of DPS to NFB and its successors and assigns up to the original principal amount of the Second DPS Note) is secured by Branford Farm. In addition to serving as collateral for the Second DPS Loan, Branford Farm is also

encumbered by a second mortgage securing an $800,000 promissory note from Mr. Sumrall, personally, to Marcus B. Peperzak ("Peperzak"). Upon information and belief, Peperzak transferred and assigned this note to AFS (as defined below) or one of its affiliates pursuant to a settlement agreement by and between Peperzak and AFS.

11. On or about January 15, 2009, NFB made a loan to DPS in the original principal amount of $2,978,129.00 (the "Third DPS Loan") as evidenced by a Promissory Note dated January 15, 2009 made payable by DPS to NFB in the original principal amount of $2,978,129.00. The Third DPS Loan (and all other debts of DPS to NFB and its successors and assigns) is secured by Bell Farm. In addition to serving as collateral for the Third DPS Loan, Bell Farm is also encumbered by a second mortgage securing a $900,000 promissory note from Sumrall, personally, to Peperzak. Upon information and belief, Peperzak transferred and assigned this note to AFS (as defined below) or one of its affiliates pursuant to a settlement agreement by and between Peperzak and AFS.

12. On or about March 19, 2009, NFB made a loan to DPS in the original principal amount of $8.6 million (the "Fourth DPS Loan"; the First DPS Loan, the Second DPS Loan, the Third DPS Loan, and the Fourth DPS Loan are, collectively, the "DPS Loans") as evidenced by a Promissory Note and Security Agreement dated March 19, 2009 made payable by DPS to NFB in the original principal amount of $8.6 million. The Fourth DPS Loan (and all other debts of DPS to NFB and its successors and assigns) is secured by, among other things, DPS's accounts, crops, equipment, farm products, general intangibles, inventory, livestock, and milk sale proceeds.

13. On or about January 20, 2009, NFB made a loan to DPS-Georgia in the original principal amount of $10.1 million (the "DPS-Georgia Loan"), as evidenced by a Promissory

5

Note and Security Agreement dated January 20, 2009 made payable by DPS-Georgia to NFB in the original principal amount of $10.1 million. The DPS-Georgia Loan (and all other debts of DPS-Georgia to NFB and its successors and assigns) is secured by, among other thing, DPS-Georgia's accounts, equipment, feed, general intangibles, livestock, and milk sale proceeds.

14. On or about July 11, 2005, NFB made a loan to DPS-Mississippi in the original principal amount of $3.25 million (the "First DPS- Mississippi Loan") as evidenced by a Promissory Note and Security Agreement dated July 11, 2005 made payable by DPS-Mississippi to NFB in the original principal amount of $3.25 million, as modified by a Debt Modification Agreement dated as of August 19, 2008, and as further modified by a Debt Modification Agreement dated as of August 28, 2008. The First DPS- Mississippi Loan (and all other debts of DPS- Mississippi to NFB and its successors and assigns) is secured by the Edwards Farm.

15. On or about May 22, 2006, NFB made a loan to DPS- Mississippi in the original principal amount of $4.512 million (the "Second DPS-Mississippi Loan"; the First DPS-Mississippi Loan and the Second DPS-Mississippi Loan are, collectively, the "DPS-Mississippi Loans") as evidenced by a Promissory Note and Security Agreement dated May 22, 2006 made payable by DPS-MS to NFB in the original principal amount of $4.512 million, as modified by a Commercial Debt Modification Agreement dated as of May 14, 2007, as further modified by a Debt Modification Agreement dated as of May 18, 2008, and as further amended by a Debt Modification Agreement dated as of December 23, 2008. The Second DPS-Mississippi Loan (and all other debts of DPS-Mississippi to NFB and its successors and assigns) is secured by, among other things, DPS-Mississippi's accounts, crops, equipment, farm products and supplies, feed, inventory, and livestock.

16. On or about June 21, 2007, NFB made a loan to HH in the original principal amount of $5.012 million (the "HH Loan") evidenced by a Promissory Note and Security Agreement dated June 21, 2007 made payable by HH to NFB in the original principal amount of $5.012 million, as modified by a Debt Modification Agreement dated June 25, 2008. The HH Loan (and all other debts of HH to NFB and its successors and assigns) is secured by HH's livestock.

17. On or about December 28, 2007, NFB made a loan to New Frontier Dairy in the original principal amount of $8.6 million (the "First New Frontier Dairy Loan") as evidenced by a Promissory Note dated December 28, 2007 made payable by New Frontier Dairy to NFB in the original principal amount of $8.6 million. The First New Frontier Dairy Loan (and all other debts of New Frontier Dairy to NFB and its successors and assigns) is secured by the New Frontier Farm.

18. On or about July 3, 2008, NFB made a loan to New Frontier Dairy in the original principal amount of $12.03 million (the "Second New Frontier Dairy Loan" and, together with the First New Frontier Dairy Loan, the "New Frontier Dairy Loans"; the DPS Loans, the DPS-Georgia Loan, the DPS-Mississippi Loans, the HH Loan, and the New Frontier Dairy Loans are, collectively, the "NFB Loans") evidenced by a Promissory Note dated July 3, 2008 made payable by New Frontier Dairy to NFB in the original principal amount of $12.03 million, as modified by a Debt Modification Agreement dated December 10, 2008, which Debt Modification Agreement reduced the credit limit under the Second New Frontier Loan from $12.03 million to $9.03 million, as further modified by a Debt Modification Agreement dated December 29, 2008, as further modified by a Debt Modification Agreement dated

7

March 20, 2009, and as further modified by a Debt Modification Agreement dated March 23, 2009.

19. The aggregate original principal amount of the NFB Loans was $64,707,129. As of the Petition Date, the principal and accrued interest under the NFB Loans was approximately $76,189,872.63. The NFB Loans are each personally guaranteed by Mr. Sumrall. Upon information and belief, to the extent Mr. Peperzak was a guarantor on some of the NFB Loans, he was released therefrom by AFS pursuant to a settlement agreement between Peperzak and AFS.

C. **Events Leading up to Bankruptcy**

20. On April 10, 2009, the Colorado Division of Banking closed NFB, and the Federal Deposit Insurance Corporation ("FDIC") was named the receiver for NFB. The FDIC subsequently auctioned the NFB Loans, and upon information and belief, Agricultural Funding Solutions, LLC ("AFS") acquired the NFB Loans with an outstanding balance (principal and interest) on the date of auction of approximately $70 million for approximately $22 million.[2]

21. The failure of NFB coincided with a severe downturn in the U.S. dairy industry that has occurred over the past 24 to 36 months and continued into 2010. From November, 2008 to February, 2009, the all-milk price fell precipitously from $17.10 per hundred weight ("CWT") to $11.60 per CWT. Prices remained below $12.00 per CWT until they began to rise in August, 2009. There are a number of reasons for this precipitous decline. The global recession appears to be a major factor. In addition to reducing domestic demand, the global recession has had dramatic effects on over-all U.S. agricultural exports, falling from a peak of

---

[2] Upon information and belief, AFS obtained "insider information" providing it with an unfair advantage in the auction of the NFB Loans, and in violation of the FDIC's rules and regulations, as well as, Federal Law. The Debtors intend to prove that AFS's use of such information and other conduct merits subordination of AFS' claims pursuant to Section 510(c) of the Bankruptcy Code and applicable law.

$10.6 billion in October, 2008 to a low of $7.3 billion in September, 2009, before rebounding to $10.0 billion in December, 2009. On a ME (mature equivalent) skim-solids basis, U.S. dairy exports reached a high of 7.6 billion pounds in the second quarter of 2008 and then declined to a low of 5.1 billion pounds in the first quarter of 2009, before rising to 6.3 billion pounds in the fourth quarter of 2009. The increase in milk production through 2008, sluggish domestic demand in 2008 and 2009, and falling export volumes in late 2008 and early 2009, created a milk surplus, driving down milk prices in early 2009.

22. The sharp decline in milk prices occurred in conjunction with significant increases in feed prices and other operational costs. From September, 2007 until September, 2008 corn prices averaged $4.20 per bushel and from October, 2007 until October, 2008 soybean meal prices averaged $335.94 per ton. These prices can be compared against expected average costs for corn and soybean meal for the September/October, 2009 to September/October, 2010 period of $3.35 - $3.95 per bushel and $270 to $320, respectively, which still are high by historic measures.

23. The decrease in milk prices and the increase in feed costs collectively created a negative impact on the Debtors' respective revenues causing severe negative cash flow problems and compromising the Debtors' ability to service the NFB Loans. These cash flow problems were exacerbated by the failure of NFB that left the Debtors without a banking relationship during one of the tightest credit markets in history. Despite being faced with these issues, the Debtors diligently pursued and exhausted all possible refinancing sources. All attempts to refinance the NFB Loans, both while the NFB loans were held by the FDIC and after AFS purportedly purchased the NFB loans, failed.

24. After the FDIC auction, the Debtors were contacted by AFS to restructure its NFB Loans and to provide the Debtors with additional financing of $3.5 million to enable the Debtors to purchase the dairy cows needed to fill the Debtors' dairies to capacity and to complete the construction on the Bell Farm (the "Additional Financing"). The Debtors in good faith attempted on numerous occasions to arrive at an acceptable restructure of the NFB Loans and terms for the Additional Financing with AFS. All efforts have proved fruitless.

25. On or about September 15, 2010, AFS filed a lawsuit (CIRCUIT CIVIL CASE NO. 2010-CA-0103) against DPS, Mr. Sumrall, and several other defendants in the Circuit Court of the Eight Judicial Circuit, Gilchrist County, Florida (the "Florida Action") seeking, among other things, foreclosure, the appointment of a receiver, and the collection of the NFB Loans. On October 5, 2010, AFS filed an Emergency Motion for Appointment of a Receiver and Request for Expedited Hearing in the Florida Action. AFS did not provide notice of this emergency motion to the Debtors until October 6, 2010. On or about October 6, 2010, AFS filed a lawsuit against DPS-Georgia in the Superior Court of Mitchell County Georgia seeking, among other things, the appointment of a receiver, and the collection of the NFB Loans. On or about October 6, 2010, AFS filed a lawsuit against DPS-Mississippi in the Chancery Court for the Second Judicial District of Hinds County, Mississippi seeking, among other things, the appointment of a receiver, and the collection of the NFB Loans. On or about October 6, 2010, AFS filed a lawsuit against New Frontier Dairy in the 266th Judicial District Court, Erath County, Texas seeking, among other things, the appointment of a receiver, and the collection of the NFB Loans.

26. As a result of (i) the decrease in milk prices and (ii) the Debtors inability to find financing to enable them to purchase the dairy cows needed to fill the dairies to capacity

(currently they are at approximately 60 to 65% of capacity) and to complete the construction on the Bell Farm, the Debtors' gross revenue on a consolidated basis dropped from $57,248,119 in 2008 to $47,967,685, in 2009.

27. Given the Debtors' severe negative cash flow problems in large part caused by the decrease in milk prices and the increase in feed costs over the last several years, AFS's refusal to provide the Additional Financing as represented to enable the Debtors to purchase the dairy cows needed to fill the Debtors' dairies to capacity and to complete the construction on the Bell Farm, the Debtors' inability to refinance or restructure the NFB Loans, and to prevent AFS's pending foreclosure and receivership actions, the Debtors decided to file the instant Chapter 11 cases.

28. Additional information about the Debtors' businesses and the events leading up to the commencement of the Debtors' bankruptcy cases (the "Bankruptcy Cases") can be found in the Declaration of David P. Sumrall, President and CEO of the Debtors, in Support of Chapter 11 Petitions and First-Day Orders (the "Sumrall Declaration"), which was filed contemporaneously with this Application and is incorporated herein by reference.

## II. JURISDICTION AND VENUE

29. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these Bankruptcy Cases and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## III. RELIEF REQUESTED

30. By this Application, the Debtors seek entry of an order, pursuant to Rule 1015(b) of the Bankruptcy Rules providing for the joint administration of the Debtors' separate Chapter

11 cases for procedural purposes only. In addition, the Debtors request that the Court designate an official caption to be used by all parties in all pleadings in the jointly administered cases.

## IV. BASIS FOR RELIEF REQUESTED

31. Bankruptcy Rule 1015(b) provides that, if two or more petitions are pending in the same court by or against a debtor and an affiliate, the court may order a joint administration of the estates of the debtors and such affiliates.

32. As set forth above, Mr. Sumrall directly owns one hundred percent (100%) of the equity interests of each of the Debtors. As such, the Debtors are all affiliates of another as such term is defined in Section 101(2)(B) of the Bankruptcy Code and as used in Rule 1015(b) of the Bankruptcy Rules. Thus, joint administration of these Bankruptcy Cases is appropriate under Rule 1015(b) of the Bankruptcy Rules.

33. The joint administration of these Bankruptcy Cases will permit the Clerk of the Court to use a single general docket for each of the Debtors' cases and to combine notices to creditors and other parties in interest of the Debtors' respective estates. The Debtors anticipate that numerous notices, applications, motions, other pleadings, hearings, and orders in these Bankruptcy Cases will affect many or all of the Debtors. Joint administration will save time and money and avoid duplicative and potentially confusing filings, by permitting counsel for all parties in interest to (a) use a single caption on the numerous documents that will be served and filed herein and (b) file the papers in one (1) case rather than five (5) separate cases. Joint administration will also protect parties in interest by ensuring that parties in interest in each of the Debtors' respective Chapter 11 cases are apprised of the various matters before the Court in all of these Bankruptcy Cases.

34. In addition, the Debtors request that the official caption to be used by all parties in all pleadings in the jointly administered cases be as follows:

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **DAIRY PRODUCTIONS SYSTEMS-GEORGIA LLC, DAIRY PRODUCTIONS SYSTEMS, LLC, DAIRY PRODUCTIONS SYSTEMS-MISSISSIPPI, LLC, NEW FRONTIER DAIRY, LLC, and HEIFER HAVEN, LLC** | ) ) ) ) ) ) ) ) | **Case No. 10-11752-JDW**<br><br><br><br><br>**Jointly Administered** |
| | ) | |
| **Debtors.** | ) ) | |

35. The rights of the respective creditors of each of the Debtors will not be adversely affected by joint administration of these Bankruptcy Cases inasmuch as the relief sought is purely procedural and is in no way intended to affect substantive rights, and each creditor and other party in interest will maintain whatever rights it has against the particular estate in which it allegedly has a claim or right. Indeed, the rights of all creditors will be enhanced by the reduction in costs resulting from joint administration. The Court also will be relieved of the burden of entering duplicative orders and keeping duplicative files. Finally, supervision of the administrative aspects of these Bankruptcy Cases by the Office of the United States Trustee for the Middle District of Georgia will be simplified.

36. No previous request for the relief sought in this Application has been made to this Court or any other Court.

## V. NOTICE

Notice of this Application has been given to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the Middle District of Georgia; (b) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (c) counsel for Agricultural Funding Solutions, LLC, the Debtors' prepetition senior secured lender; (d) Gilchrist County Taxing Authorities, PO Box 37, Trenton, FL 32693; (e) Eddie Fair, Hinds County Tax Collector, PO Box 51, Raymond, MS 39154; (f) Jackie Batchelor T.C., Mitchell County, PO Box 373, Camilla, GA 31730; (g) Jennifer Carey, Erath County Tax Assessor, 320 W. College, Stephenville, TX 76401; and (h) all other parties required to receive service under Rule 2002 of the Bankruptcy Rules. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form as the proposed order attached hereto as Exhibit "A," granting the relief requested in the Application, and such other and further relief as is just and proper.

Respectfully submitted this 7th day of October, 2010.

        ARNALL GOLDEN GREGORY LLP

        /s/ Sean C. Kulka
        Neil C. Gordon (Bar No. 302387)
        Sean C. Kulka (Bar No. 648919)
        Zachary D. Wilson (Bar No. 102079)
        171 17th Street, N.W., Suite 2100
        Atlanta, Georgia 30363-1031
        Telephone: (404) 873-8500

        *Proposed Attorneys for Debtors and*
        *Debtors-in-Possession*

EXHIBIT A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DAIRY PRODUCTIONS SYSTEMS- | ) | |
| GEORGIA LLC, | ) | Case No. 10-11752-JDW |
| | ) | |
| DAIRY PRODUCTIONS SYSTEMS, LLC, | ) | Case No. 10-11754-JDW |
| | ) | |
| DAIRY PRODUCTIONS SYSTEMS- | ) | |
| MISSISSIPPI, LLC, | ) | Case No. 10-11755-JDW |
| | ) | |
| NEW FRONTIER DAIRY, LLC | ) | Case No. 10-11756-JDW |
| | ) | |
| HEIFER HAVEN, LLC | ) | Case No. 10-11757-JDW |
| | ) | |
| Debtors. | ) | |

**ORDER DIRECTING JOINT ADMINISTRATION OF CASES
PURSUANT TO BANKRUPTCY RULE 1015(b)**

Upon the application (the "Application") of Dairy Production Systems - Georgia LLC, ("DPS-Georgia") Dairy Production Systems, LLC ("DPS"), Dairy Production Systems - Mississippi, LLC, ("DPS-Mississippi") New Frontier Dairy, LLC, ("New Frontier Dairy") and Heifer Haven, LLC ("HH"; DPS-Georgia, DPS, DPS Mississippi, New Frontier Dairy, and HH are collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned bankruptcy cases (the "Bankruptcy Cases"), for an order administratively consolidating their respective Chapter 11 cases for procedural purposes only pursuant to Federal Rule of Bankruptcy Procedure 1015(b); and upon the Declaration of David P. Sumrall, President and CEO of the Debtors, in Support of Chapter 11 Petitions and First-Day Orders (the "Sumrall Declaration");

and this Court having determined that joint administration of these Chapter 11 cases is in the best interests of the Debtors, their respective bankruptcy estates and creditors; and it further appearing that proper and adequate notice has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore; it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The Debtors are affiliates of one another as such term is defined in Section 101(2)(B) of the Bankruptcy Code and as used in Bankruptcy Rule 1015(b)

2. The Bankruptcy Cases are consolidated for procedural purposes only and shall be administered jointly by the Court.

3. The caption of these jointly administered Bankruptcy Cases shall read as follows:

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **DAIRY PRODUCTIONS SYSTEMS-GEORGIA LLC, DAIRY PRODUCTIONS SYSTEMS, LLC, DAIRY PRODUCTIONS SYSTEMS-MISSISSIPPI, LLC, NEW FRONTIER DAIRY, LLC, and HEIFER HAVEN, LLC** | ) ) ) ) ) ) ) ) | **Case No. 10-11752-JDW** |
| | ) | **Jointly Administered** |
| | ) | |
| **Debtors.** | ) ) | |

4. A docket entry shall be made in each of the Debtors' respective bankruptcy cases substantially as follows:

An order (the "Consolidation Order") has been entered in this bankruptcy case directing the procedural consolidation and joint administration of the Chapter 11 cases listed below. The docket in Case No. 10-11752-JDW should be consulted for all matters affecting this bankruptcy case. The following Chapter 11 cases have been consolidated pursuant to the Consolidation Order.

    Dairy Production Systems - Georgia LLC
    Dairy Production Systems, LLC
    Dairy Production Systems - Mississippi, LLC
    New Frontier Dairy, LLC
    Heifer Haven, LLC

### *** END OF ORDER ***

Prepared and presented by:

/s/ Sean C. Kulka
Neil C. Gordon (Bar No. 302387)
Sean C. Kulka (Bar No. 648919)
Zachary D. Wilson (Bar No. 102079)
171 17th Street, N.W., Suite 2100
Atlanta. GA 30363-1031
Telephone: (404) 873-8500
Facsimile: (404) 883-8501

*Proposed Attorneys for Debtors
and Debtors-in-Possession*