# EXHIBIT B

# ENGAGEMENT LETTER BETWEEN THE DEBTORS AND MORGAN JOSEPH TRIARTISAN LLC



March 24, 2011

**Personal and Confidential**

Mr. David P. Sumrall
Chief Executive Officer
Dairy Production Systems, LLC
23343 NW CR236
High Springs, Florida 32643


Dear Mr. Sumrall:

This letter agreement (the "Agreement") confirms our understanding of the terms and conditions under which Dairy Production Systems, LLC (together with Dairy Production Systems – Georgia LLC, Dairy Production Systems – Mississippi, LLC, New Frontier Dairy, LLC, Heifer Haven, LLC, the "Company" and together as debtors under Chapter 11 of the Bankruptcy Code jointly administered in Case No. 10-11752-JDW in the United States Bankruptcy Court, Middle District of Georgia, Albany Division) shall engage Morgan Joseph TriArtisan LLC ("Morgan Joseph") to act as its exclusive financial advisor with respect to evaluating and pursuing a potential Restructuring Transaction, Financing Transaction, and/or Sale Transaction (each as defined below), effective as of the date indicated above (the "Effective Date"). For purposes hereof, the term "Company" shall include affiliates of the Company and any entity that may be formed by the Company or its affiliates to invest in or consummate a Restructuring Transaction, Financing Transaction, and/or Sale Transaction (as defined below), and shall include any successor or assignee of all or a portion of the assets and or businesses of the Company whether pursuant to a Plan (as defined below) or otherwise.

Upon execution of this Agreement, Morgan Joseph shall immediately commence to perform the Financial Advisory Services set forth in Paragraph 1 (A) below and use its best efforts to obtain financing to consummate a plan of reorganization.

1. Description of Services

As part of our engagement, we will, if appropriate and requested, perform the following financial advisory and/or investment banking services:

    A. Financial Advisory Services. Upon execution of this Agreement, Morgan Joseph will:

        i. assist and advise the Company with the analysis of the Company's business, business plan, and strategic and financial position; and

  ii. assist with the formulation, evaluation, implementation of various options for a restructuring, financing, reorganization, merger, or sale of the Company, or its assets or businesses.

 B. <u>Restructuring Advisory Services</u>. If the Company pursues a Restructuring Transaction, Morgan Joseph will:

  i. provide financial advisory services to the Company in connection with developing, and seeking approval for, a restructuring plan (a "Plan"), which may be a plan under chapter 11 of title 11 of the United States Code, 11U.S.C.§§ 101 <u>et</u>. <u>seq</u>. (the "Bankruptcy Code");

  ii. provide financial advisory services to Company in connection with the structuring of any new securities to be issued under the Plan;

  iii. assist the Company in negotiations with creditors, shareholders and other appropriate parties-in-interest; and

  iv. if necessary, participate in hearings before the bankruptcy court with respect to matters upon which Morgan Joseph has provided advice, including coordinating with the Company's counsel with respect to testimony in connection therewith.

For the purposes of this Agreement, a "Restructuring Transaction" shall be defined as any single transaction or series of transactions that effectuates any modification, amendment to, or change in, any of the Company's obligations and/or indebtedness for borrowed money, including accrued and/or accreted interest thereon, which are outstanding as of the Effective Date ("Indebtedness"), including, without limitation, interest bearing trade debt, senior bank debt and subordinated debt. Such modification, amendment, or change shall include, without limitation, any transaction(s) which provide for: any material modification, amendment or change of, or in, principal balance, accrued or accreted interest, payment term, other debt service requirement, and/or financial or operating covenant; any forbearance for at least twelve (12) months with respect to any payment obligation; conversion to equity, or some other security instrument, of any, or all, of such obligations or indebtedness; any compromise of the existing terms of such obligations and/or indebtedness; any combination of the foregoing transactions. Each of the foregoing shall include, without limitation, any transaction in which requisite consents to a reorganization or restructuring are obtained pursuant to a tender offer, exchange offer, consent solicitation or other process, or a plan of reorganization under the United States Bankruptcy Code.

      C. <u>Financing Advisory Services.</u> If the Company pursues a Financing Transaction, Morgan Joseph will:

          i. if necessary, assist in preparing a private placement memorandum (with any amendments and supplements thereto, the "Private Placement Memorandum") for distribution and presentation to prospective Investors (as defined below);

          ii. assist in identifying and contacting prospective Investors (as defined below) as well as in soliciting indications of interest in a Financing Transaction among prospective Investors;

          iii. assist in evaluating indications of interest received from prospective Investors;

          iv. assist in negotiating the financial terms and structure of a Financing Transaction; and

          v. provide other financial advisory service and investment banking services reasonably necessary to accomplish the foregoing and consummate a Financing Transaction.

For purposes of this Agreement, each of the following transactions shall constitute a "Financing Transaction", whether or not such transaction is effectuated in-court, out-of-court, through the confirmation of a plan of reorganization or otherwise under the United States Bankruptcy Code, or whether the requisite consents to such transaction(s) are obtained in-court or out-of-court:

          a) Any refinancing of all or any portion of the Company's existing obligations; and/or

          b) The raising or issuance of <u>any</u> form of new equity or debt financing by the Company or any formed by, or at the direction of, or which is a majority-owned subsidiary, or affiliate, of the Company, from any source including, without limitation, any of the Company's existing owners, shareholders, employees, creditors or affiliates (each such source, an "Investor").

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Morgan Joseph to act in any capacity or to underwrite, place, or purchase any financing or securities.

D. <u>Sale Advisory Services</u>. If the Company pursues a Sale Transaction, Morgan Joseph will:

   i. if necessary, assist in preparing an offering memorandum (with any amendments and supplements thereto, the "Sale Memorandum") for distribution and presentation to prospective purchasers;

   ii. assist in soliciting interest in a transaction among prospective purchasers;

   iii. assist in evaluating proposals received from prospective purchasers;

   iv. advise the Company as to the structure of the Sale Transaction, including the valuation of any non-cash consideration;

   v. assist in negotiating the financial terms and structure of a Sale Transaction; and

   vi. provide other financial advisory service and investment banking services reasonably necessary to accomplish the foregoing and consummate a Sale Transaction.

Subject to the provisions of Paragraph 3 below, for purposes of this Agreement, the term "Sale Transaction" is defined to include any of the following (whether in one or a series of transaction): (a) a merger or consolidation of the Company and/or any of its businesses, subsidiaries or affiliates (b) a sale of at least 50% of the equity securities of the Company (whether from the Company or security holders of the Company) or any business, subsidiary or affiliate of the Company (whether from such business, subsidiary, affiliate or the Company), in any case whether by sale, exchange, tender offer or otherwise, (c) any transaction which results in a third party having the right to elect a majority of the members of the Board of Directors of the Company, (d) a sale (including, without limitation, by sale, lease, license, exchange or other acquisition) of a significant amount of the assets (tangible or intangible) of the Company or any of its businesses, subsidiaries or affiliates, (e) a liquidation of the Company or any of its businesses, subsidiaries or affiliates, (f) any recapitalization or restructuring (including spin-off or split-off of assets) of the Company or any of its businesses, subsidiaries or affiliates, or (g) any other form of disposition which results in the effective disposition of all or a substantial amount of the business, operations, or assets of the Company or any of its businesses, subsidiaries or affiliates.

For the purposes hereof, the term "Transaction" shall include a Restructuring Transaction, Financing Transaction and/or a Sale Transaction.

Other than with the financing from a foreign source (or its representatives) for the DPS Financing hereinafter identified, the Company agrees that neither it, its management, controlling shareholders or affiliates will initiate any discussions regarding a Restructuring Transaction, Financing Transaction or Sale Transaction during the term of this Agreement, except through Morgan Joseph. Furthermore, the Company agrees to promptly inform Morgan Joseph of any inquiry it receives regarding a Restructuring Transaction, Financing Transaction or Sale Transaction.

Morgan Joseph makes no representation or guarantee that an appropriate Restructuring Transaction, Financing Transaction or Sale Transaction can be formulated, that any Restructuring Transaction, Financing Transaction or Sale Transaction in general or any transaction in particular is the best course of action for the Company or, if formulated, that the execution of any proposed Restructuring Transaction, Financing Transaction or Sale Transaction will, if required, be accepted or approved by the Board of Directors (including any special committee of the Board of Directors) or the Company's member and other constituents. Further Morgan Joseph assumes no responsibility for the selection and approval of any strategic alternative presented to the Company or the Company's Board of Directors (including any special committee of the Board of Directors), which determination shall rest with the Company and the Board.

In connection with Morgan Joseph's engagement, the Company will furnish Morgan Joseph with all information concerning the Company which Morgan Joseph reasonably deems appropriate and will provide Morgan Joseph with access to the Company's officers, directors, employees, accountants, counsel and other representatives (collectively, the "Representatives"), it being understood that Morgan Joseph will rely solely upon such information supplied by the Company and its Representatives without assuming any responsibility for independent investigation or verification thereof. The Company represents and warrants that any financial projections provided to Morgan Joseph have been, or will be, prepared on bases reflecting the best currently available estimates and judgments of the future financial results and condition of the Company. The Company will, in writing, promptly notify Morgan Joseph of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to Morgan Joseph or any interested party.

The Company will be solely responsible for the contents of the Private Placement Memorandum and/or Sale Memorandum and any and all other written or oral communications provided by or on behalf of the Company to any Investors and/or purchasers. After review, the Company will represent and warrant that the Private Placement Memorandum and Sale Memorandum and such other communications will not contain any untrue statement of material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein not misleading. If an event occurs as a result of which the Private Placement Memorandum and/or Sale

Memorandum would include any untrue statement of a material fact or omit to state any material fact necessary to make the statements therein not misleading, the Company will promptly notify Morgan Joseph and Morgan Joseph will suspend solicitations of prospective Investors and/or purchasers until such time as the Company prepares a supplement or amendment to the Private Placement Memorandum and/or Sale Memorandum that corrects such statement(s) and/or omission(s).

2. Compensation

As compensation for our services hereunder, the Company agrees to pay Morgan Joseph as follows:

- A. Monthly Fees. In addition to the Transaction Fee(s) provided for herein, upon the execution of this Agreement, and on every monthly anniversary of the Effective Date during the term of this Agreement, the Company shall pay Morgan Joseph, without notice or invoice, a non-refundable cash fee of $50,000 per month (the "Monthly Fee"). The Company shall pay Morgan Joseph a minimum of four (4) Monthly Fees, a total of $200,000, regardless of if and when the Company elects to terminate this Agreement pursuant to terms of paragraph 3 below. Each Monthly Fee shall be earned upon Morgan Joseph's receipt thereof.

- B. Transaction Fee(s) In addition to the other fees provided for herein, the Company shall pay Morgan Joseph the following transaction fee(s) (collectively the "Transaction Fee(s)"):

    - i. Restructuring Transaction Fee. Upon the earlier to occur of: (a) the consummation of any out-of-court Restructuring Transaction(s); and (b) the effective date of a confirmed plan of reorganization under Chapter 11 of the Bankruptcy Code, which constitutes a Restructuring Transaction, Morgan Joseph shall earn, and the Company shall promptly pay to Morgan Joseph, a Transaction Fee (the "Restructuring Transaction Fee") equal to $1,000,000, other than a restructuring and confirmation of a plan arising out of the Company (or an affiliate of it) consummating the DPS Financing. In the event that the DPS Financing is consummated after 60 days from the date hereof, then the Restructuring Transaction Fee shall be $400,000 and all monthly fees received by Morgan Joseph shall be credited against the $400,000, but in no event shall the $400,000 be reduced below $0. In the event that the DPS Financing is consummated within 60 days from the date hereof, then the Restructuring Transaction Fee shall be $200,000 and all monthly fees received by Morgan Joseph shall be credited against the $200,000, but in no event shall the $200,000 be reduced below $0.

ii. <u>Financing Transaction Fee</u>. Concurrently with the closing of a Financing Transaction other than a restructuring and confirmation of a plan arising out of the Company (or an affiliate of it) consummating the DPS Financing, Morgan Joseph shall earn, and the Company shall thereupon immediately and directly from the proceeds of such Financing Transaction, as a cost of such transaction, a Transaction Fee (the "Financing Transaction Fee") equal to the sum of:

   a) 2.0% (two percent) of the aggregate principal amount of all senior notes and bank debt raised or committed, plus;

   b) 4.0% (four percent) of the aggregate amount of all unsecured, non-senior and subordinated debt raised or committed, and;

   c) 6.0% (six percent) of the aggregate amount of equity and equity-linked securities, including convertible securities and preferred stock, placed or committed.

iii. <u>Sale Transaction Fee</u>. Concurrently with the close of each Sale Transaction, Morgan Joseph shall earn, and the Company shall thereupon pay immediately and directly from the proceeds of such Sale Transaction, as a cost of sale, a Sale Transaction Fee ("Sale Transaction Fee") equal to the greater of $750,000 or 3.0% (three percent) of cumulative Aggregate Gross Consideration ("AGC") from the first and all subsequent Sale Transactions (if any) provided that Morgan Joseph shall not earn a Sale Transaction Fee in a Chapter 7 sale.

iv. <u>Multiple Sale Transaction Fee.</u> In addition to the Sale Transaction Fee(s) described above, concurrently with the close of the second and each subsequent Sale Transaction, Morgan Joseph shall earn, and the Company shall thereupon pay immediately and directly from the proceeds of such Sale Transaction, as a cost of sale, a Multiple Sale Transaction Fee ("Multiple Sale Transaction Fee") equal to $50,000.

For purposes of this Agreement, the term "Aggregate Gross Consideration" shall mean the total fair market value (at the time of closing) of all consideration including, without duplication or limitation, cash, notes, securities and property; payments made in installments; amounts payable under above-market consulting agreements, above-market employment contracts, non-compete agreements or similar arrangements; and Contingent Payments (as defined below), paid or payable, or otherwise to be distributed, directly or indirectly, to the Company, the Company's subsidiaries or affiliates or the Company's member, plus all indebtedness assumed by the purchaser of assets of the Company and /

or any of its businesses, subsidiaries or affiliates or from which the Company or any of its businesses, subsidiaries or affiliates is relieved in connection with a Sale Transaction. If any portion of the Aggregate Gross Consideration is payable in the form of securities, the value of such securities, for purposes of calculating our Sale Transaction Fee, will be determined based on the average closing price for such securities for the five trading days prior to the closing of the Sale Transaction. In the case of securities that do not have an existing public market, Aggregate Gross Consideration will be determined based on the fair market value of such securities as mutually agreed upon in good faith by the Company and Morgan Joseph prior to the closing of the Sale Transaction. Fees on amounts paid into escrow will be payable upon the establishment of such escrow. Fees relating to shareholders, Contingent Payments other than escrowed amounts will be calculated based on the present value of the reasonably expected maximum amount of such contingent payments as determined in good faith by the Company and Morgan Joseph prior to the closing of the Sale Transaction, utilizing a discount rate equal to the prime rate published in The Wall Street Journal on the last business day preceding the closing of the Sale Transaction. If the parties cannot reach such an agreement, an additional Sale Transaction Fee(s) shall be paid to Morgan Joseph in the same proportions and at the same times as the Contingent Payments are paid or received. Contingent Payments shall be defined as the fair market value of consideration received or receivable by the Company, its employees, former or current equity holders and/or other parties, in the form of deferred, performance-based payments, "earn-outs", or other contingent payments based on future performance of the Company or any of its businesses or assets.

Aggregate Gross Consideration shall be calculated as if 100% of the equity interests of the Company had been sold by dividing (i) the total consideration, whether in cash, securities, notes or other forms of consideration, received or receivable by the Company and/or its creditors and equity holders by (b) the percentage of ownership sold. In addition, if any of the Company's interest bearing liabilities are assumed, decreased, or paid off in conjunction with a Sale Transaction, or any of the Company's assets are retained, sold or otherwise transferred to another party prior to the consummation of a Sale Transaction. The Aggregate Gross Consideration will be increased to reflect the fair market value of any such assets or interest-bearing liabilities.

In the event the Company consummates one or more Transaction(s) (a Financing Transaction, a Sale Transaction and/or a Restructuring Transaction), the Company shall pay to Morgan Joseph the greater of the Financing Transaction Fee, the Restructuring Transaction Fee and the Sale Transaction Fee and shall not be obligated to pay more than one Transaction Fee (except in the event of more than one Sale Transaction, in which case the Company shall be obligated to pay Multiple Sale Transaction Fee(s)).

Notwithstanding anything contained herein to the contrary, the aggregate amount of all Monthly Fees and Transaction Fees shall not exceed the sum of $1,250,000.00, plus expenses.

3. Term

This Agreement shall have an initial term of twelve (12) months and thereafter, shall be automatically extended on a monthly basis. The Agreement may be terminated by either party without cause by giving 30 days' written notice to the other party. In the event of any such termination, any fees and expenses due to Morgan Joseph shall be remitted to Morgan Joseph promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination).

If, within twelve (12) months of the expiration of this Agreement, or the termination of this Agreement for any reason other than Morgan Joseph's resignation, the Company consummates, or enters into an agreement in principle to engage in, a Restructuring Transaction, Financing Transaction or Sale Transaction ( which subsequently closes at any time), with any party, or any affiliate, employee, investor in such party, which (i) Morgan Joseph identified, contacted or with whom Morgan Joseph or the Company had discussions regarding a potential Restructuring Transaction, Financing Transaction or Sale Transaction during the term of this Agreement, or (ii) reviewed written materials prepared by Morgan Joseph concerning the Company and/or the proposed Restructuring Transaction, Financing Transaction or Sale Transaction, Morgan Joseph shall be entitled to receive its Transaction Fee(s) upon the consummation of such Restructuring Transaction, Financing Transaction or Sale Transaction as if no expiration or termination had occurred. Within 30 days of the termination of this Agreement, Morgan Joseph shall provide the Company with the names of each and every party it contacted and claims a Transaction Fee would be owed hereunder if the Company entered into a Restructuring Transaction, Financing Transaction or Sale Transaction within 12 months of the termination hereof.

No expiration or termination of this Agreement shall affect (a) the Company's indemnification, reimbursement, contribution or other obligations as set forth in this Agreement, (b) Morgan Joseph's right to receive, and the Company's obligation to pay, any and all fees and expenses due, whether or not any Restructuring Transaction, Financing Transaction or Sale Transaction is consummated prior to or subsequent to the effective date of termination of this Agreement.

4. Expenses

In addition to the fees described above, and regardless of whether or not any transaction contemplated by this Agreement shall be proposed or consummated, the Company agrees to promptly reimburse Morgan Joseph, on a monthly basis, for all reasonable out-of-pocket expenses incurred by Morgan Joseph in connection with the matters contemplated by this Agreement; such expenses shall be charged at cost for itemized categories such as travel, lodging and meals, and shall be charged in accordance with the then effective Morgan Joseph policy for duplicating, information services, research, messenger, telephone charges. Subject to Bankruptcy Court approval of a fee application, Morgan Joseph shall also be reimbursed for the reasonable fees and expenses of its counsel

incurred in connection with the enforcement of this Agreement. All fees and expenses will be billed on a monthly basis and will be payable within ten days of receipt of the bill therefore or as authorized by the Bankruptcy Court.

5.     <u>Bankruptcy Court Approval</u>

Given the Company is a debtor under Chapter 11 of the Bankruptcy Code, the Company shall promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (i) this Agreement, including the attached indemnification, and (ii) Morgan Joseph's retention by the Company under the terms of this Agreement and subject to the standard of review of Section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall supply Morgan Joseph with a draft of such application and any proposed order authorizing Morgan Joseph's retention sufficiently in advance of the filing of such application and proposed order to enable Morgan Joseph and its counsel to review and comment thereon. Morgan Joseph shall have no obligation to provide any services under this Agreement unless its retention is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Morgan Joseph in all respects. Morgan Joseph acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Morgan Joseph's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders provided however, that Morgan Joseph shall not be required to maintain time records and, provided further, that Morgan Joseph shall maintain receipts for expenses incurred on behalf of the Company. Since the Company is a debtor under the Bankruptcy Code, in the event Morgan Joseph's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Morgan Joseph hereunder as promptly as possible in accordance with the terms of this Agreement, the order of the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Morgan Joseph to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. If the order authorizing the employment of Morgan Joseph is not obtained, or is later reversed or set aside for any reason, Morgan Joseph may terminate this Agreement, and the Company shall reimburse Morgan Joseph for all fees and expenses reasonably incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders.

With respect to Morgan Joseph's retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that Morgan Joseph's restructuring expertise, as well as its capital markets knowledge, financial skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Morgan Joseph's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit

to the Company of Morgan Joseph's services hereunder could not be measured merely by reference to the number of hours expended by Morgan Joseph professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Morgan Joseph and its professionals hereunder over the term of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Morgan Joseph and that actual time and commitment required of Morgan Joseph and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for Morgan Joseph. In addition, given the numerous issues which Morgan Joseph may be required to address in the performance of its services hereunder, Morgan Joseph's commitment to the variable level of time necessary to address all such issues as they arise, and the market prices for Morgan Joseph's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including Monthly Fee and the various Transaction Fees) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

6.  Relationship of the Parties

The parties intend that an independent contractor relationship will be created by this Agreement in order to provide the services described above to the Company. Neither Morgan Joseph nor any of its personnel or subcontractors is acting as a fiduciary of the Company, the security holders or creditors of the Company or any other persons in connection with this engagement. Furthermore, neither Morgan Joseph nor any of its personnel or subcontractors is to be considered an employee of the Company and the personnel and subcontractors of Morgan Joseph are not entitled to any of the benefits that the Company provides for the Company's employees.

7.  Other Services

In the event that Morgan Joseph is requested by the Company to perform any financial advisory or investment banking services outside the scope of this Agreement, such as a fairness opinion, fees for such services shall be mutually agreed upon by Morgan Joseph and the Company, in writing, in advance, and shall be in addition to the fees and expenses described above. Notwithstanding the foregoing, if Morgan Joseph is required to render services directly or indirectly relating to litigation relating to the subject matter of this Agreement, the Company shall pay Morgan Joseph's then-current rates for rendering such services, including, but not limited to, time for meetings, conferences, preparation and travel, and all related reasonable out-of-pocket costs and expenses, including without limitation, the reasonable legal fees and expenses of Morgan Joseph's legal counsel in connection therewith.

8.   No Third Party Beneficiary

The Company acknowledges that all advice (written or oral) given by Morgan Joseph to the Company in connection with this engagement is intended solely for the benefit and use of the Company in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose without Morgan Joseph's prior approval (which shall not be unreasonably withheld), except as required by law.

9.   Confidentiality

During the term of the Agreement, Morgan Joseph will keep confidential any material non-public information about the Company made available to Morgan Joseph by the Company in connection with its engagement hereunder and will not use such confidential information other than in connection with its engagement hereunder or related engagements with Company; provided, such confidential information shall not include: (i) any information already available to or in possession of Morgan Joseph prior to the date of its disclosure to Morgan Joseph by the Company; (ii) any information that is or becomes generally available to the public without breach of this Agreement; or (iii) any information which becomes available to Morgan Joseph on a non-confidential basis from a third party who is not known by Morgan Joseph to be bound by a confidentiality obligation to the Company and provided further, that such confidential information may be disclosed: (a) to Morgan Joseph partners, employees, agents, advisors and representatives in connection with its engagement hereunder who shall be informed of the confidential natures of the information; (b) to any person with the consent of the Company; (c) if Morgan Joseph is required to disclose such information pursuant to law, judicial or administrative process or regulatory demand or request of any body having jurisdiction over Morgan Joseph; or (d) if such disclosure is deemed necessary by Morgan Joseph in litigation or any other proceeding in which any of its current or former directors, officers, employees, agents, representatives, affiliates or any person who controls Morgan Joseph is, or is threatened to be made, a party. This paragraph supersedes any prior agreement between the Company and Morgan Joseph respecting confidentiality.

10.   Indemnification

The Company agrees to provide indemnification, contribution, and reimbursement to Morgan Joseph in accordance with, and the Company further agree to be bound by the provisions set forth in, Schedule A attached hereto, which Schedule A is incorporated herein and made a part hereof. Termination of this engagement shall not affect these indemnification provisions, which shall remain in full force and effect.

11.  Miscellaneous

No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement, and any claim related directly or indirectly to this Agreement, shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements executed and to be fully performed therein without regard to principles of conflicts of laws that would defer to the laws of another jurisdiction. The parties hereby irrevocably and unconditionally submit (to the extent permitted by law) to the exclusive jurisdiction of the United States Bankruptcy Court for the Middle District of Georgia located in Albany, GA. for any legal action or proceeding arising out of this Agreement, and agree to bring (to the extent permitted by law) any such action or proceeding in such court. Each of the parties hereby irrevocably consents to service of process in any such action or proceeding by certified or registered mail at the address for such party set forth above. The parties waive all right to trial by jury in any action or proceeding (whether based upon contract, tort or otherwise) related to or arising out of this Agreement. This Agreement may not be assigned nor may the obligations of a party hereunder be delegated without the prior written consent of the other party hereto. The obligations of this Agreement shall be binding upon and shall only inure to the benefit of the parties hereto, the Indemnified Parties (as defined in Schedule A attached hereto) and any of their successors, permitted assigns, heirs and personal representatives.

The USA PATRIOT Act, which imposes certain anti-money laundering requirements on brokerage firms and financial institutions, requires you to provide us with your tax identification number and may also require you to provide us with certain other identification documents or other information in order for us to be permitted to effect transactions for you (including the transaction(s) contemplated by this engagement letter). In addition, we may also be required to make certain inquiries of other organizations for information about you in order to fulfill our responsibilities under Federal regulations.

The Company acknowledges that Morgan Joseph may, at its option and expense, place announcements and advertisements or otherwise publicize its services to the Company hereunder (which may include the reproduction of the Company's corporate logo). Morgan Joseph will provide the Company a draft of any contemplated announcement prior to its publication and make reasonable modifications to such announcement as requested by the Company. Furthermore, if requested by Morgan Joseph, the Company shall include a mutually acceptable reference to Morgan Joseph in any press release or other public announcement made by the Company regarding the matters described in this letter.

The invalidity or unenforceability of any provision in this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

The Company agrees that it will be solely responsible for ensuring that any Restructuring Transaction, Financing Transaction, or Sale Transaction complies with applicable law. The Company understands that Morgan Joseph is not undertaking to provide any legal, regulatory, accounting, insurance, tax or similar professional advice.

This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Morgan Joseph because this Agreement was drafted by Morgan Joseph, and the parties waive any statute or rule of law to such effect.

The Company has the requisite power and authority to enter into this Agreement and the transactions contemplated hereby. This Agreement has been duly and validly authorized by all necessary action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

This Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties relating to the subject matter hereof.

12.  **DPS Financing:**

Morgan Joseph agrees to obtain the consent, in writing, from the Company prior to contacting any potential Investors or prospective purchasers. Notwithstanding anything contained herein to the contrary, Morgan Joseph acknowledges and agrees that the Company has disclosed to it that an affiliate of the Company has been in discussions with and entered into an agreement to obtain financing from a foreign source (the "DPS Financing). In the event the Company or an affiliate of the Company consummates the DPS Financing, then Morgan Joseph shall only be entitled to the Transaction Fees set forth in Paragraph 2 (B) (i) above.

Dairy Production Systems, LLC
March 24, 2011
Page 15

Morgan Joseph is delighted to accept this engagement and looks forward to working with you on this assignment. If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms and return an executed copy of this Agreement, whereupon, after execution by Morgan Joseph, it shall become a binding agreement between the parties hereto. A telecopy of a signed original of this Agreement shall be sufficient to bind the parties whose signatures appear hereon.

Very truly yours,

MORGAN JOSEPH TRIARTISAN LLC

By: *[signature]*
Name: James D. Decker
Title: Managing Director


Accepted and agreed to as of the date first written above:

**DAIRY PRODUCTION SYSTEMS, LLC**

By: *[signature]*
Name: David P. Sumrall
Title: President and Chief Executive Officer

# SCHEDULE A

This Schedule A is incorporated by reference into Morgan Joseph TriArtisan LLC's letter agreement dated March 24, 2011 (the "Agreement") with Dairy Production Systems, LLC (the "Company") in connection with the matter or matters described in such Agreement.

The Company agrees to indemnify and hold harmless Morgan Joseph and its affiliates and their respective directors, managers, officers, employees, agents and controlling persons (each, with Morgan Joseph, an "Indemnified Person") from and against all losses, claims, damages, liabilities or expenses (or actions or proceedings, including security holder actions or proceedings, in respect thereof), joint and several, related to or arising out of such engagement or the rendering of additional services by Morgan Joseph as requested by the Company that are related to the services rendered under the Agreement, or Morgan Joseph's role in connection therewith (collectively, a "Claim" and/or "Loss"), and will reimburse each Indemnified Person promptly for all expenses (including, subject to Bankruptcy Court approval, the reasonable fees of counsel and expenses) as they are incurred by an Indemnified Person in connection with the investigation of, preparation for, or defense of any pending or threatened Claim, or any such action or proceeding arising therefrom, whether or not such Indemnified Person is a formal party to any such lawsuit or other proceeding ("Proceeding") and whether or not such Proceeding is initiated by or brought on the Company's behalf.

An Indemnified Person is not entitled to the foregoing indemnification to the extent such Claim is finally judicially determined to have resulted solely from such Indemnified Person's gross negligence or willful misconduct.

The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or any person asserting claims on the Company's behalf or in the Company's right for or in connection with such engagement, except to the extent that such Claim is finally judicially determined to have resulted solely from such Indemnified Person's gross negligence or willful misconduct. In no event, regardless of the legal theory advanced, shall any Indemnified Person be liable for any consequential, indirect or incidental or special damages of any nature.

If the indemnity or reimbursement referred to above is, for any reason whatsoever, unenforceable, unavailable or otherwise insufficient to hold each Indemnified Person harmless, the Company agrees to contribute to amounts paid or payable by an Indemnified Person in respect of such Indemnified Person's Losses so that each Indemnified Person ultimately bears only a portion of such Losses as is appropriate (i) to reflect the relative benefits received by each such Indemnified Person, respectively, on the one hand and the Company (and the Company security holders) on the other hand, or (ii) if the allocation on that basis is not permitted by applicable law, to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of each such Indemnified Person, respectively, and the Company as well as any other relevant equitable considerations; provided, however, that in no event shall the aggregate contribution of all Indemnified Persons to all Losses exceed the amount of the fee actually received by Morgan Joseph pursuant to the Agreement.

The Company agrees that without Morgan Joseph's prior written consent which shall not be unreasonably withheld the Company will not enter into any settlement or compromise of, or consent to, any judgment in a Proceeding arising out of the transactions contemplated by the Agreement and in which Morgan Joseph or any other Indemnified Person could reasonably be likely to be an actual or potential party to such Proceeding, unless such settlement, compromise or judgment (i) includes an explicit and unconditional release from the party bringing such Proceeding of all Indemnified Persons from all liability arising therefrom and (ii) the amount involved in any such settlement, compromise, consent or termination is paid in full directly by the Company or on behalf of the Company, and such compromise settlement, consent or termination does not (x) acknowledge any liability of or wrongdoing by an Indemnified Person, (y) adversely affect the business of an Indemnified Person, or (z) limit the future conduct of an Indemnified Person whether by injunction, consent decree or other decree or otherwise.

Promptly after an Indemnified Person's receipt of notice of the commencement of any Proceeding, an Indemnified Person shall notify the Company in writing of the commencement thereof, but omission so to notify the Company will not relieve the Company from any liability which the Company may have to such Indemnified Person, except the Company's obligations to indemnify to the extent that the Company suffers actual prejudice as a result of such failure, but shall not relieve the Company from the Company's obligation to provide reimbursement of expenses (including subject to Bankruptcy Court approval, the reasonable fees of counsel and expenses). The Company further agrees that the Indemnified Persons are entitled to retain separate counsel of their choice in connection with any of the matters in respect of which indemnification, reimbursement or contribution may be sought under this Agreement, and subject to Bankruptcy Court approval, the reasonable fees and expenses of such counsel shall be included in the indemnification hereunder.

The Company will pay to Morgan Joseph and each Indemnified Person, in addition to the other fees and expenses payable to it, the charges as reasonably incurred by Morgan Joseph for any time of any officers, directors or employees of Morgan Joseph devoted to appearing and preparing to appear as witnesses, assisting in preparation for hearings, trials or pretrial matters or otherwise with respect to hearings, trials, pretrial matters and other proceedings in any way relating to, or referred to in, or arising out of the Agreement or Morgan Joseph's role in connection therewith as approved in a fee application by the Bankruptcy Court. The Company will also pay subject to Bankruptcy Court approval, the reasonable fees and expenses of the Indemnified Person's counsel in connection with the matters referred to in this paragraph.

The foregoing shall be in addition to any rights that Morgan Joseph may have at common law or otherwise. The Agreement including this Schedule A shall be binding upon and inure to the benefit of Company's successors, assigns, heirs, and personal representatives, and upon Morgan Joseph and any other Indemnified Person and their respective successors, assigns, heirs and personal representatives.

It is understood that, in connection with Morgan Joseph's engagement, Morgan Joseph may also be requested to act for the Company in one or more additional capacities, and that the terms of any such additional engagement may be embodied in one or more separate written or oral agreements. The obligations set forth in this Schedule A shall apply to each of Morgan Joseph's engagements by the Company and any modification of any of such engagements, and shall remain in full force and effect following their completion or termination.

The provisions of this Schedule A may not be amended or modified except in writing by Morgan Joseph and the Company and shall be governed by and construed in accordance with the laws of the State of New York. The Company hereby consents to personal jurisdiction and service and venue in any court in which any claim which is subject to the provisions of this Schedule A is brought against an Indemnified Person. MORGAN JOSEPH HEREBY AGREES, AND THE COMPANY HEREBY AGREES FOR ITSELF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF THE COMPANY'S SECURITYHOLDERS, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THIS AGREEMENT, INCLUDING THE PROVISIONS OF THIS SCHEDULE A, OR MORGAN JOSEPH'S PERFORMANCE THEREUNDER.